**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **JAMES D. ASHLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 08-846-D |
| ) | |
| **MICHAEL J. ASTRUE, Commissioner,** ) | |
| **SOCIAL SECURITY ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying his application for supplemental security income benefits. United States District Judge Timothy D. DeGiusti has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter Tr. __). As the parties have briefed their positions, the matter is at issue. For the following reasons, it is recommended that the decision of the Commissioner be reversed and that the matter be remanded for further proceedings.

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for supplemental security income benefits on September 15, 2005, alleging a disability onset date of February 15, 2005, caused by depression and psychotic episodes. Tr. 61, 62-67, 110. The application was denied on initial

consideration and on reconsideration at the administrative level. Tr. 29, 30, 31-34, 37-39. Pursuant to Plaintiff's request, a hearing was held before an administrative law judge on March 14, 2007. Tr. 40, 364-90. Plaintiff appeared in person with his attorney, and offered testimony in support of his application. Tr. 366, 369-80. A vocational expert and medical expert also testified at the request of the administrative law judge. Tr. 51-52, 56-57, 366, 380-387, 388-390. The administrative law judge issued her decision on August 31, 2007, finding that Plaintiff was not disabled within the meaning of the Social Security Act, and thus not entitled to benefits. Tr. 13-15, 16-25. The Appeals Council denied Plaintiff's request for review on July 18, 2008, and therefore the decision of the administrative law judge became the final decision of the Commissioner. Tr. 5-8A.

## II. STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

> [W]e[1] independently determine whether the [administrative law judge's] decision is "free from legal error and supported by substantial evidence."Although we will "not reweigh the evidence or retry the case," we "meticulously examine the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met."
>
> "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but

---

[1] Although the Tenth Circuit Court of Appeals was discussing its own standard of review, the same standard applies to the federal district court's appellate review of social security cases. Hamilton v. Sec'y of Health & Human Servs., 961 F.2d 1495, 1502 n.1 (10th Cir. 1992) ("as the second-tier appellate court, a circuit court does apply the same standard of review as the district court-the standard applicable to appellate review of individual social security cases").

>less than a preponderance." Our determination of whether the [administrative law judge's] ruling is supported by substantial evidence "must be based upon the record taken as a whole." Consequently, we remain mindful that "[e]vidence is not substantial if it is overwhelmed by other evidence in the record."

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted).

To determine whether a claimant is disabled, the Commissioner employs a five-step sequential evaluation process:

>Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. At step three, the [administrative law judge] considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." If a claimant's impairments are not equivalent to a listed impairment, the [administrative law judge] must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy.

Id. at 1052 (citations omitted). The claimant bears the burden to establish a prima facie case of disability at steps one through four. Williams v. Bowen, 844 F.2d 748, 751 & n.2 (10th Cir. 1988). If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy given the claimant's age, education, and work experience. Id. at 751.

**III.  THE ADMINISTRATIVE LAW JUDGE'S DECISION**

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 416.920. Tr. 17-18. She first found that Plaintiff had not engaged in substantial gainful activity since the protective filing date of September 15, 2005. Tr. 18. At steps two and three, the administrative law judge found that Plaintiff suffers from the severe impairments of depression, alcohol dependence, and degenerative disc disease, and she found that Plaintiff's depression and alcohol dependence met the criteria for Listings 12.04 and 12.09 as set forth in 20 C.F.R. Part 404, Appendix 1, Subpart P, Social Security Regulations, No. 4. Tr. 19-20. The administrative law judge next found that if Plaintiff ceased substance abuse, he would still suffer from the severe impairment of degenerative disc disease, but he would not have an impairment or combination of impairments that meets or equals the impairments listed at 20 C.F.R. Part 404, Appendix 1, Subpart P, Social Security Regulations, No. 4.   Tr. 21-22.  The administrative law judge then concluded that without substance abuse, Plaintiff would have the residual functional capacity to perform a full range of light work involving lifting 20 pounds occasionally and ten pounds frequently. Tr. 22-24. Based on this residual functional capacity assessment, the administrative law judge found at step four of the sequential evaluation process that Plaintiff was able to perform his past relevant work if he stopped substance abuse. Tr. 25. Accordingly, the administrative law judge found that Plaintiff's substance abuse disorder was a contributing factor material to the determination of disability and, therefore, he was not disabled.  Tr. 25.

**IV.   PLAINTIFF'S ISSUES RAISED ON APPEAL**

Plaintiff raises two issues for judicial review.  In his first point of error, Plaintiff argues that the administrative law judge did not follow correct legal standards in analyzing the effects of his alcohol abuse.  Plaintiff's Opening Brief, p. 3.  More specifically, Plaintiff argues that the administrative law judge committed a legal error in analyzing the materiality of his alcohol abuse because the administrative law judge did not conclude that Plaintiff was disabled prior to considering the effects of his alcohol abuse.  <u>Id.</u> at 3-6.  Plaintiff also contends that the administrative law judge's finding that alcohol abuse was material to the finding of disability is not supported by substantial evidence because the administrative law judge did not properly establish the materiality of Plaintiff's alcohol abuse.  <u>Id.</u> at 6.  Plaintiff argues that the medical record does not contain information that permitted the administrative law judge to separate the effects of his substance abuse from the effects of his mental impairments, and that the administrative law judge did not consider relevant evidence in concluding that his substance abuse was material to the disability determination.  <u>Id.</u> at 6-8.  In his second argument on appeal, Plaintiff contends that the administrative law judge did not follow correct legal standards at step four of the sequential analysis.  <u>Id.</u> at 8.

In response, the Commissioner contends that the administrative law judge properly evaluated Plaintiff's alcohol addiction.  The Commissioner notes that contrary to Plaintiff's argument, the administrative law judge determined that Plaintiff was disabled prior to evaluating the materiality of Plaintiff's alcohol abuse.  Response Brief, p. 14.  The Commissioner also explains how substantial evidence supports the administrative law

judge's determination that Plaintiff's alcohol addiction was material to the finding of disability. Id. at 14-18.  Lastly, the Commissioner argues that the administrative law judge conducted a proper analysis in finding that Plaintiff could perform his past relevant work. Response Brief, p. 12.

## V.  CONTRACT WITH AMERICA ADVANCEMENT ACT

The Contract with America Advancement Act of 1996 provides that "an individual shall not be considered to be disabled [under either Title II or XVI of the Social Security Act] . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J); accord 20 C.F.R. § 416.935.  If an administrative law judge finds that the claimant is disabled and has medical evidence of the claimant's drug addiction or alcoholism, the administrative law judge "must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. § 416.935(a). The "key factor" in making this determination is whether the claimant would still be found disabled if he stopped using drugs or alcohol.  20 C.F.R. § 416.935(b)(1).

A two-step analysis is required to determine whether drug addiction or alcoholism is a contributing factor material to a determination of disability. First, the administrative law judge must determine which of the claimant's physical and mental limitations would remain if the claimant refrained from drug or alcohol use.  Then, the administrative law judge must determine whether the claimant's remaining limitations would be disabling.  20 C.F.R. § 416.935(b)(2). If the claimant's remaining limitations would not be disabling, the claimant's

alcoholism or drug addiction is a contributing factor material to a determination of disability and benefits will be denied.  See 20 C.F.R. § 416.935(b)(2)(i).  If the claimant would still be considered disabled due to his remaining limitations, the claimant's alcoholism or drug addiction is not a contributing factor material to a determination of disability and the claimant is entitled to benefits.  See 20 C.F.R. § 416.935(b)(2)(ii).

## VI.  MEDICAL EVIDENCE

The relevant medical evidence shows that on March 1, 2005, Plaintiff was admitted to Integris Southwest Medical Center after ingesting half a bottle of Tylenol while drinking "a lot of vodka" in what appeared to be a suicide attempt.  Tr. 148-50.  Physicians at Integris Southwest noted that Plaintiff was consuming approximately one pint of alcohol per day and diagnosed him with suicidal ideation, major depression, acetaminophen toxicity, and alcohol intoxication.  Tr. 144, 146, 150. Plaintiff was discharged from Integris Southwest and admitted to the Oklahoma County Crisis Intervention Center on March 4, 2005.  Tr. 142, 287-88.

When Plaintiff was admitted to the Oklahoma County Crisis Intervention Center, he denied that he combined alcohol and Tylenol as part of a suicide attempt, and instead stated that he had done so to relieve back pain he was experiencing.  Tr. 287, 315.  At the time of his admission, Plaintiff stated that he drank approximately one to one and a half pints of vodka daily and that he had been doing so since 2000.  Tr. 287.  Plaintiff was diagnosed with depressive disorder, not otherwise specified, and alcohol dependence.  Tr. 311.  He was treated, and then discharged on March 8, 2005, with a referral for outpatient substance abuse

treatment.  Tr. 303, 309, 311, 332, 348.

On March 9, 2005, Plaintiff reported to the outpatient substance abuse treatment center, Hope Community Services, seeking medication.  Tr. 221.  He was also seen at Hope Community Services on May 5, 2005, wanting treatment for depression and anxiety.  Tr. 212.  Plaintiff reported that he was consuming alcohol weekly at the time.  Tr. 210, 213.  Dr. Haisam Al-Khouri performed an initial psychiatric evaluation of Plaintiff on June 6, 2005.  Tr. 196-97.  On that date, Plaintiff admitted that he had attempted suicide earlier in the year by ingesting Tylenol and alcohol.  Tr. 196.  Plaintiff claimed that he quit drinking alcohol after his February 2005 hospitalization following his suicide attempt.[2]  Plaintiff reported experiencing auditory hallucinations, but no visual hallucinations, delusions, or homicidal or suicidal ideations.  Tr. 196.  Dr. Al-Khouri diagnosed Plaintiff with major depressive disorder, single episode severe with psychotic features, and alcohol dependence in early, sustained remission, with a current GAF of 45.[3]  Tr. 196.  Dr. Al-Khouri prescribed a medication regimen for Plaintiff.  Tr. 196.

Plaintiff returned to Hope Community Services for a follow up appointment on September 19, 2005.  Tr. 195.  He reported taking his medications regularly and Dr. Al-

---

[2] Presumably, the "February 2005" hospitalization is actually the March 2005 hospitalization discussed above.

[3] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning."  Langley v. Barnhart, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004) (citation and quotation omitted).  A GAF score of 41-50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning."  Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32.

Khouri adjusted his medications. Tr. 195. On September 27, 2005, Plaintiff was admitted to the emergency room at Integris Southwest with a "decreased level of consciousness" after his mother found him sleeping with an empty Seroquel bottle nearby. Tr. 152. When he arrived at the hospital, his blood alcohol content was 0.21. Tr. 154. The impression was altered level of consciousness and probable Seroquel overdose. Tr. 154. Plaintiff was observed overnight and discharged the following day with instructions to follow-up with psychiatric care. Tr. 156. Plaintiff returned to Hope Community Services for an appointment on January 9, 2006, where he denied substance abuse or suicidal ideations. Tr. 185. Dr. Al-Khouri continued Plaintiff on medication and instructed him to return for treatment. Tr. 184.

On January 17, 2006, Dr. Gary France, a clinical psychologist, conducted a mental status examination of Plaintiff. Tr. 164-68. Plaintiff reported that he had drunk vodka the day before. Tr. 165. Dr. France observed that "some anhedonia and depression are present." Tr. 167. However, he found that Plaintiff's general information, memory, judgment, and abstract thinking were all "good," while his concentration and short term memory were "fair." Tr. 167. Dr. France's diagnoses included a primary diagnosis of history of bipolar disorder and a secondary diagnosis of alcohol dependence and a GAF of 50. Tr. 167.

Shortly after Plaintiff's mental status examination, a disability determination services physician, Dr. Burnard Pearce, completed a Psychiatric Review Technique form on February 7, 2006, evaluating Plaintiff under Listing 12.09 for substance addiction disorder. Tr. 170-183. As to Plaintiff's functional limitations, Dr. Pearce concluded that Plaintiff was

moderately limited in his restriction of activities of daily living, had moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace, and that he had experienced one or two episodes of decompensation, each of extended duration. Tr. 180.  In a Mental Residual Functional Capacity Assessment form completed on February 7, 2006, Dr. Pearce concluded that Plaintiff was markedly limited in his ability to understand and remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the general public, but that he was not significantly limited in any other mental activity.  Tr. 234-35.  Dr. Cynthia Kampschaefer concurred in Dr. Pearce's assessment.  Tr. 238.

On May 25, 2006, Plaintiff visited Hope Community Services where a physician's assistant modified his prescriptions. Tr. 354.  Plaintiff was brought to the Integris Southwest emergency room again on August 3, 2006 after he attempted suicide by overdosing on alcohol and Valium.  His blood alcohol level at the time was 0.35.  Tr. 345.  Plaintiff denied attempting to commit suicide, claiming instead that he was just trying to "relax."  Tr. 256, 261, 333. 345.  He reported that he had been abusing alcohol daily for the previous five years.  Tr. 346.  Plaintiff was preliminarily diagnosed with alcohol-induced depression, polysubstance dependance, personality disorder not otherwise specified, and hypertension, and he was assessed with a current GAF of 30. Tr. 261, 334.

At Plaintiff's August 17, 2006, visit to Hope Community Services, Plaintiff claimed to be taking his medications regularly and denied any substance abuse, and a physician's assistant assessed no change in Plaintiff's diagnosis or medication regimen.  Tr. 353.

However, it is not clear whether Plaintiff disclosed his recent suicide attempt and hospitalization to his health care provider as the physician's assistant indicated that Plaintiff had no suicidal ideations. See Tr. 353.

On October 4, 2006, Plaintiff sought treatment from Hope Community Services for symptoms of depression and anxiety, and reported that the only substances he was using at the time were cigarettes, soft drinks, and coffee. Tr. 355-60. Plaintiff reported that he had continued feelings of depression and anxiety, and that he experienced difficulties with this short-term memory and concentration, and that he had no friends. Tr. 360. Hope Community Services staff set up a treatment plan for Plaintiff's complaints with an expected discharge date of October 2007. Tr. 355-57. His current GAF was assessed at 45. Tr. 356.

Plaintiff was discharged from the care of the Hope Community Services at his request on January 17, 2007, with a GAF of 45, the same score as when Plaintiff was admitted for treatment services in May 2005 and in October 2006. Tr. 351.

At the hearing, the administrative law judge obtained testimony from both Plaintiff and a medical expert, Dr. Dian Bower. Plaintiff reported to the administrative law judge that he had abstained from alcohol use since March 2006. Tr. 378. However, the medical record demonstrates that Plaintiff used alcohol at least until August 2006, Tr. 345, as noted by Dr. Bower. Tr. 380. Dr. Bower also testified that the medical record supported the diagnosis of alcohol induced depression rendered by Plaintiff's treating health care providers, and that during the time periods in which Plaintiff was abusing alcohol, he met the criteria for Listing 12.04. Tr. 380-81. However, she also testified that during the time periods when Plaintiff

11

abstained from alcohol abuse, he did not meet the criteria of a listing, though he did still have depression and other psychological impairments. Tr. 381-82.

**VII. DISCUSSION**

Initially, the undersigned notes there is no problem with the first portion of the administrative law judge's analysis of Plaintiff's alcohol addiction. Though Plaintiff argues that the administrative law judge did not follow correct legal standards because she failed to conclude that Plaintiff was disabled while abusing alcohol prior to assessing whether Plaintiff would be disabled in the absence of alcohol abuse, that claim is baseless. Plaintiff's Opening Brief, p. 5. The administrative law judge unequivocally found that Plaintiff met the criteria of Listings 12.04 and 12.09 when he abuses alcohol which is tantamount to a conclusion of disability. Tr. 19-20; see 20 C.F.R. § 416.920(d). The problem with the decision at issue here stems from the administrative law judge's analysis concerning the materiality of Plaintiff's alcohol abuse where the question presented is "whether . . . [Plaintiff's] alcoholism is a contributing factor material to the determination of disability." See 20 C.F.R. § 416.935(a). To answer that question, the administrative law judge must determine which of the claimant's physical and mental limitations would remain if the claimant refrained from drug or alcohol use. Then, the administrative law judge must determine whether the claimant's remaining limitations would be disabling. 20 C.F.R. § 416.935(b)(2).

In her decision, the administrative law judge concluded that the only severe impairment that afflicts Plaintiff when he is not abusing alcohol is degenerative disc disease. Tr. 21. She found that Plaintiff' mental impairment would not be severe if Plaintiff stopped

his substance abuse. See Tr. 21-22. Accordingly, the administrative law judge's residual functional capacity assessment reflects only limitations and analysis based upon Plaintiff's physical impairment, degenerative disc disease, and nothing accounting for any nonexertional mental limitations. See Tr. 22-25. The problem with this determination is that there is more than ample evidence to meet Plaintiff's "de minimis" burden to demonstrate that his depression is a severe impairment even at times when he is not abusing alcohol. See Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) (observing that a social security claimant's burden to demonstrate the existence of a severe impairment is "de minimis."). For example, there is no medical record which indicated that Plaintiff drank alcohol after he was released from the hospital following his August 3, 2006, suicide attempt. Tr. 380. However Plaintiff reported in October 2006 that he was continuing to experience feeling of depression and anxiety, and that he had difficulty with his short term memory and concentration and with socializing. Tr. 360. At the time Plaintiff ceased treatment, his GAF score was 45 which indicates "serious symptoms," or "serious impairment in social, occupation, or school functioning." Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32. Furthermore, Dr. Bower, the medical expert, opined that Plaintiff still would have depression even if he ceased alcohol abuse, but it would not be as severe. Tr. 381-82. But the administrative law judge neither addressed this evidence, nor explained her conclusion that Plaintiff's depression was not severe when he was not abusing alcohol, and this failure necessitates reversal. See Tr. 21-22; Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994) ("There must be competent evidence in the record to support the

conclusions recorded on the [Psychiatric Review Technique] form and the [administrative law judge] must discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form." (quotation omitted)). The administrative law judge's failure to address this evidence is particularly troubling given that she made Psychiatric Review Technique findings regarding the severity of Plaintiff's depression which do not appear to be supported by the record and which do not appear to be informed by any opinions rendered by a physician. See id.; see also Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the [administrative law judge] also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

For example, in her Psychiatric Review Technique analysis, the administrative law judge stated that Plaintiff would have only mild limitations in his social functioning without the effects of substance abuse and that he would "get along with others better and does not isolate to the extent he does when using alcohol," but the record is devoid of any evidence to support this conclusion and the administrative law judge cites none in her decision. See Tr. 21. The only evidence pertaining to the issue actually indicates that opposite: that Plaintiff continues to isolate himself and has few friends because he is afraid of rejection, even during times when he is not abusing alcohol. Tr. 360. The administrative law judge also stated in her Psychiatric Review Technique analysis that during the times in which Plaintiff abstained from alcohol abuse, he would have only mild limitations with respect to concentration, persistence, or pace, and that there was no "indication that the claimant's

depression caused him to seek treatment." Tr. 21.  This assertion is belied by the record as well though.  Plaintiff sought treatment for depression at Hope Community Services in both August and October 2006, while he at least claims that he was not abusing alcohol, and he reported that he experienced difficulty with his short term memory and concentration.  Tr. 353, 360.  Additionally, at the hearing, Plaintiff complained that he continued to experience problems with his memory and concentration.  Tr. 376.

Given that the administrative law judge failed to follow correct legal standards in evaluating the severity of Plaintiff's depression without the effects of alcohol addiction and that her conclusions are not based upon substantial evidence, the decision should be reversed.  Further, because the administrative law judge did not appropriately address Plaintiff's depression in the absence of alcohol abuse, she did not consider whether nonexertional limitations stemming from Plaintiff's depression should be incorporated into her residual functional capacity assessment.  Tr. Tr. 22-24.  This too is erroneous because the residual functional capacity assessment must show consideration of "the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."  20 C.F.R. § 416.923; see also Soc. Sec. Ruling 96-8p, 1996 WL 374184, at * 5 (July 2, 1996).

Further, the administrative law judge did not make any findings regarding the mental demands of Plaintiff's past relevant work, either as he performed it or as it is customarily performed in the national economy.  Winfrey v. Chater, 92 F.3d 1017, 1024 (10th Cir. 1996).  Without these findings, the administrative law judge was unable to make the necessary

findings about Plaintiff's ability to meet the mental demands of the past relevant work despite any mental impairments.  Id. at 1025.

### **RECOMMENDATION**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge, and the pleadings and briefs of the parties, the undersigned Magistrate Judge finds that the decision of the administrative law judge decision did not employ correct legal standards and is not supported by substantial evidence.  Accordingly, it is recommended that the final decision of the Commissioner of Social Security Administration be reversed and that the matter be remanded for further proceedings.  The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by August 25, 2009, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 5th day of August, 2009.**

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE